UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

**Ronald and Gail Brown**

  v.            Civil No. 04-cv-466-PB
                Opinion No. 2017 DNH 095

**John A. Baldi**

## MEMORANDUM AND ORDER

Ronald and Gail Brown have applied for a writ of scire facias in an effort to collect on a 2007 judgment against John Baldi.[1]

### I. FACTS[2]

John and Catherine Baldi at one time jointly owned land in Epsom, New Hampshire that abutted property owned by Raymond and Beryl Dow. In 1995, the Dows orally agreed to transfer part of their land (the "24-Acre Parcel") to the Baldis in exchange for the Baldis' agreement to allow the Dows to cut trees on a

---

[1] Writs of scire facias are not issued by federal courts but the same relief may be obtained through an appropriate motion. Fed. R. Civ. P. 81(b). Accordingly, I treat the Browns' motion as a request for a writ of execution.

[2] I draw the facts from the parties' proffers. If any fact cited in this Memorandum and Order remains in genuine dispute, the party challenging the fact shall explain why it is disputed in a memorandum filed within 14 days.

portion of the Baldis' property. The parties agreed to make the transfer by means of a boundary line adjustment. A plan depicting the proposed boundary line adjustment was subsequently approved by the Epsom Planning Board and filed in the Registry of Deeds on May 18, 1995. Although no deed effecting the transfer was prepared at that time, the Baldis thereafter paid all property taxes on the 24-Acre Parcel and treated it as their own in all respects.

Several years later, on November 2, 2004, Baldi recorded a deed conveying his interest in the 24-Acre Parcel to his wife for nominal consideration. More than ten years later, on June 13 2015, Baldi obtained a quitclaim deed from the Dows purportedly transferring any interest the Dows had in the 24-Acre Parcel to the Baldis as joint tenants. Baldi has explained that he obtained the deed to remove any uncertainty as to his wife's ownership of the 24-Acre Parcel.

I held a hearing on the Browns' motion for writ of scire facias on January 24, 2017. Baldi appeared at the hearing and presented several arguments as to why the renewed writ of execution should not issue. I rejected all of his arguments except his claim that the writ should not issue because he did

2

not have an ownership interest in the property that the Browns are targeting with their request.[3]

## II. STANDARD OF REVIEW

Writs of execution are authorized by Federal Rule of Civil Procedure 69(a)(1), which provides that the procedure on execution in federal court to collect a monetary judgment ordinarily "must accord with the procedure of the state where the court is located." New Hampshire law states that writs of execution may be awarded more than two years after a judgment issues "upon scire facias for the amount then due." N.H. Rev. Stat. Ann. § 527:7. "Scire facias is a judicial writ directing a judgment debtor to appear and show cause why, after the lapse of the limitation period, execution against him should not be revived." McBurney v. Shaw, 148 N.H. 248, 251 (2002) (emphasis omitted). I therefore evaluate the Browns' motion using the scire facias process specified in New Hampshire law.

---

[3] To the extent that Baldi does not have an interest in the property that will be encumbered if the writ of execution issues, it is unclear whether he has standing to challenge an attempt to levy on the property. Rather than analyze the issue without briefing, I merely assume that Baldi has standing and move on to consider his substantive argument.

### III. ANALYSIS

The principal question in this case is whether Baldi currently has an interest in the 24-Acre Parcel that can be the target of a writ of execution.[4] Unsurprisingly, the parties have different perspectives on the issue. Baldi argues that the Dows gave up their interest in the 24-Acre Parcel in 1995 when they

---

[4] Baldi has responded to the Browns' request for a renewed writ of execution with a variety of unpersuasive arguments. He launched an unsuccessful effort to have the judgment set aside, which I rejected during the January 24, 2017, hearing. He invoked the inapplicable fraudulent conveyance statute of limitation in arguing that I lacked jurisdiction to hear the Browns' request, see Doc. No. 133 ¶¶ 5-6, Doc No. 135 ¶ 11, and he incorrectly claimed that the Browns cannot bring their request because they settled a legal malpractice claim against their former lawyer for failing to pursue a fraudulent conveyance action against Baldi, see Doc. No. 137-1 at ¶¶ 2-5. My reasons for rejecting those arguments are obvious and do not require explanation.

Baldi also implicitly contends that the Browns are not entitled to a new writ of execution because their attachment on the 24-Acre Parcel is invalid. Baldi fails to explain, however, how a determination that the attachment is invalid will affect the Browns' current motion. Accordingly, I decline to consider Baldi's challenges to the attachment, which in any event should be brought by a separate motion.

Baldi's only remaining argument is his claim that the Browns are not entitled to a writ of execution because Baldi has no property that could be a proper subject of the writ. The Browns respond by arguing that Baldi currently holds a property interest in the 24-Acre Parcel that can be used to satisfy the judgment. In addressing this argument, I assume, for purposes of analysis only, that a court can refuse to reissue a writ of execution if the court determines that the judgment debtor has no assets that can be used to satisfy the judgment.

agreed to the boundary line adjustment plan.  At that point, Baldi claims, he and his wife owned the property as joint tenants.  As Baldi sees it, he conveyed his interest in the property to his wife in 2004 and the 2015 Quitclaim Deed did not give him any new interest in the property because, at that point, the Dows had no interest in the property to convey.  The Browns contend that the Dows did not surrender their ownership interest in the 24-Acre Parcel in 1995 because the conveyance was never completed through the delivery and acceptance of a properly drafted deed.  Accordingly, the Browns argue that Baldi did not obtain an interest in the 24-Acre Parcel until the Dows deeded him that interest in 2015.  Because Baldi still holds that interest, the Browns argue, it is an appropriate target for their attempt to collect on their judgment.

New Hampshire law favors the Browns on this specific point.  Although the Dows attempted to convey the 24-Acre Parcel by means of a boundary line agreement, the statute authorizing boundary line agreements permits them only when the location of a boundary line is in genuine dispute.  See N.H. Rev. Stat. Ann. §§ 472:1, 4.  As the leading treatise on the subject notes, "[a] boundary line agreement is a clarification of existing property rights — not an agreement to adjust a boundary to a more preferable configuration, or a swap of a part of one property

5

for part of another." 17-10 Charles Szypszak, New Hampshire Practice: Real Estate § 10.01 (2017).

What the Baldis and the Dows attempted to accomplish was a conveyance. Real estate, however, must be conveyed by a written deed. See N.H. Rev. Stat. Ann. §§ 477:1, 15. In contrast, an oral conveyance, which is what occurred here, gives the beneficiary only an estate at will. See N.H. Rev. Stat. Ann. § 477:15. Thus, the parties' 1995 oral agreement to transfer the 24-Acre Parcel from the Dows to the Baldis was not completed until the 2015 Quitclaim Deed was issued. Before then, the Dows retained their ownership of the 24-Acre Parcel subject to both an estate at will benefitting the Baldis and the Baldis' inchoate right to acquire title at a later date.[5] The 2015 Quitclaim Deed thus transferred the Dows' remaining ownership interest in the 24-Acre Parcel to the Baldis.

Although I agree with the Browns that the Dows did not effectively transfer their interest in the 24-Acre Parcel to the

---

[5] To the extent that Baldi argues that the boundary line adjustment plan is a deed, his argument fails. "A deed must contain an indication of the grantor's intent that the land is being conveyed." 17-5 Charles Szypszak, New Hampshire Practice: Real Estate § 5.05 (2017). The boundary line adjustment plan cannot qualify as a deed under this test because it merely subdivides the Dows' land and reflects their intention to transfer the 24-Acre Parcel to the Baldis at some unspecified point in the future.

6

Baldis until they executed and delivered the 2015 Quitclaim Deed, I remain unconvinced that Baldi currently holds an interest in the property that may be used to satisfy the Browns' judgment. Baldi conveyed his interest in the 24-Acre Parcel to his wife in 2004. It is therefore at least arguable that any interest Baldi acquired by virtue of the Dows' 2015 Quitclaim Deed passed to his wife. See generally White v. Ford, 124 N.H. 452, 454–55 (1984) (per curiam) (applying estoppel-by-deed doctrine); Fadili v. Deutsche Bank Nat. Trust Co., 772 F.3d 951, 954–55 (1st Cir. 2014). If Baldi's interest did pass to his wife, he does not now have a property interest in the 24-Acre Parcel that can be used to satisfy the judgment against him. Because this issue has not yet been briefed, I direct the parties to file memoranda addressing this issue within 14 days.[6]

SO ORDERED.

/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

May 19, 2017

cc: John A. Baldi, pro se
John P. Fagan, Esq.

---

[6] To the extent that Baldi has raised additional arguments in his filings, his arguments are obviously meritless and do not require analysis.